CV 14 - 00281

SUMMONS ISSUED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

DWAYNE HOLLEY,

               Plaintiff,

      -against-

THE CITY OF NEW YORK, and JOHN
DOE AND JANE DOE #1-5 (the names
John and Jane Doe being fictitious, as the
true names are presently unknown),

               Defendants.
------------------------------------------------------------X

Case No.

VITALIANO, J.

**COMPLAINT**

**JURY DEMAND**

GOLD, M.J.

Plaintiff, DWAYNE HOLLEY, by his attorney, The Law Offices of UGO UZOH, P.C., complaining of the defendants herein, The City of New York, and John Doe and Jane Doe #1-5 (collectively, "defendants"), respectfully alleges as follows:

1.     This is an action at law to redress the deprivation of rights secured to the plaintiff under color of statute, ordinance, regulation, custom, and/or to redress the deprivation of rights, privileges, and immunities secured to the plaintiff by the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. §1983 [and § 1985], [and arising under the law and statutes of the City and State of New York].

JURISDICTION

2.     The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343, 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and under the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

3.     As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §1391 (b) and (c).

COMPLIANCE WITH N.Y. GEN. MUN. LAW REQUIREMENTS

4.     Plaintiff timely made and served a notice of claim upon the defendants in compliance with N.Y. Gen. Mun. Law § 50-e.

5.      At least thirty days have elapsed since the service of aforesaid notice of claim and adjustment or payment thereof has been neglected or refused.

6.      This action is commenced within one year and ninety days after the happening of the event(s) upon which the claim(s) is based.

## THE PARTIES

7.      Plaintiff is and was at all times material herein a resident of the United States and the State of Maryland.

8.      At all relevant times, defendants John Doe and Jane Doe #1-5 (hereinafter "defendant officers") were, upon information and belief, and still are, agents and/or officers employed by defendant City of New York.

9.      At all times herein, the defendant officers were acting under the color of their official capacity, and their acts were/are performed under color of the statutes and ordinances of the City of New York and/or the State of New York. Defendant officers were/are the servants, agents, and employees of their co-defendant, the City of New York, such that their acts are imputed to the City of New York.

10.     At all relevant times, the defendant City of New York was and is a municipal corporation duly organized and existing under the laws of the State of New York, and was/is the employer of the defendant officers, and the actions of the defendant officers complained of herein were done as part of the custom, practice, usage, regulation and/or at the direction of the defendant City of New York.

11.     Plaintiff is suing the defendant officers in their individual and official capacities.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12.     On or about July 18, 2012, at approximately 4:00 p.m., defendant officers, acting in concert, arrested plaintiff without cause at or close to 36 Bond Street, Brooklyn, New York, and charged plaintiff with PL 240.20(6) 'Disorderly conduct.'

13.     Plaintiff, however, did not congregate with other persons in a public place nor refuse to comply with a lawful order of the police to disperse, and did not

commit any offense against the laws of New York City and/or State for which any arrest may be lawfully made.

14.    Prior to the arrest, plaintiff, who was on visit to his mother who resides in Brooklyn, New York, accompanied his brother in-laws, Gerald Coulter and Nieshawn Osmond, on a personal/business trip to downtown Brooklyn, New York.

15.    Plaintiff and his brother in-laws rode in a vehicle driven by Coulter.

16.    Upon arriving at the aforementioned location of the arrest, Coulter parked and exited the vehicle with Osmond for a brief meeting with another individual.

17.    Plaintiff, however, remained in the vehicle and was seated in the front passenger seat.

18.    After a brief period of time, plaintiff heard a knock on the window.

19.    Plaintiff then saw a male who was dressed in civilian clothes standing by the window.

20.    Plaintiff inquired as to what the individual needed help.

21.    The individual who happens to be one of the defendant officers, which was unknown to the plaintiff at the time, directed the plaintiff to move the vehicle.

22.    At the time, plaintiff's driving privileges in New York State was suspended.

23.    Plaintiff promptly stated that his license was suspended and that he could not move the vehicle.

24.    The individual/officer however continued to yell loudly and insist that the plaintiff must move the vehicle.

25.    Plaintiff was forced to exit the vehicle in an attempt to locate Coulter.

26.    As plaintiff exited the vehicle, he was forcibly grabbed by the officer.

27.    After grabbing the plaintiff, the officer threw him up against the wall and pinned him to the wall.

28.    Plaintiff sustained injuries as a result.

29.    The officer then pulled out his badge and identified himself as a police officer.

30.     The officer called the plaintiff an "a**hole" and stated that the plaintiff is "going to f**king jail".

31.     As the officer held the plaintiff, additional police officers arrived at the scene.

32.     Plaintiff was tightly handcuffed by defendant officers with his hands placed behind his back.

33.     Defendant officers refused plaintiff's entreaties to remove or loosen the handcuffs placed on him as the handcuffs were too tight and were cutting into his skin causing him to experience pain and numbness in his arms.

34.     Eventually, defendant officers led the plaintiff to the NYPD-Transit District 30 for arrest processing.

35.     After detaining the plaintiff for several hours, defendant officers released the plaintiff from his unlawful detention.

36.     Defendant officers did however direct the plaintiff to appear in court on a subsequent date to defend the false charge(s) levied against him.

37.     Plaintiff subsequently appeared in court on multiple occasions to defend the false charge(s) levied against him by defendant officers.

38.     On or about November 21, 2012, the criminal court summarily dismissed the false charge(s) levied against the plaintiff.

39.     That each and every officer who responded to and/or was present at the location of the arrest and/or at the precinct or station house knew and was fully aware that the plaintiff did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

40.     Nonetheless, defendant officers did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to intervene.

41.     As a result of the aforesaid actions by the defendants, plaintiff suffered and continues to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, loss of rights to familial association, wages and/or financial losses, pain and damage, and damage to reputation.

## FIRST CAUSE OF ACTION: 42 U.S.C. § 1983

42.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 41 of this complaint as though fully set forth herein.

43.     The conduct of defendant officers, as described herein, amounted to false arrest, excessive use of force, abuse of authority, malicious abuse of process, failure to intervene, deliberate indifference, cruel and inhuman treatment, cruel and unusual punishment, unlawful stop and frisk, unreasonable detention, unreasonable search and seizure, racial profiling, selective enforcement, pattern of harassment, conspiracy, fabrication of evidence, denial of freedom of speech, first amendment retaliation, denial of equal protection of the laws, discrimination, denial of right to a fair trial, denial of due process rights and malicious prosecution.

44.     Such conduct violated plaintiff's rights under 42 U.S.C. § 1983 and the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

45.     Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

## SECOND CAUSE OF ACTION: FAILURE TO TRAIN/SUPERVISE/DISCIPLINE AND MUNICIPAL POLICY - against defendant City of New York

46.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 45 of this complaint as though fully set forth herein.

47.     Defendant City of New York, acting through the New York Police Department, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of

innocent persons and obligation to effect an arrest only when probable cause
exists for such arrest.

48.     Additionally, defendant City of New York, acting through Kenneth P.
        Thompson and the Office of the District Attorney of the County of Kings,
        had actual and/or de facto policies, practices, customs and/or usages of
        failing to properly train, supervise, and discipline its Assistant District
        Attorneys and employees concerning correct practices in conducting
        investigations, interviewing witnesses and informants, assessing the
        credibility of witnesses and informants, the initiation and/or prosecution of
        criminal actions, obligation not to promote or condone perjury and/or assist
        in the prosecution of innocent persons and the duty and/or obligation of
        candor toward the court.

49.     Defendant City of New York, acting through aforesaid NYPD and District
        Attorney, had actual and/or de facto policies, practices, customs and/or
        usages of wrongfully arresting, illegally stopping, frisking, searching,
        seizing, abusing, humiliating, degrading and/or maliciously prosecuting
        individuals who are members of racial/ethnic minority groups such as
        plaintiff, who is black, on the pretext that they were involved in some crime
        or offense.

50.     Further, the existence of the aforesaid unconstitutional policies, practices,
        customs and/or usages may be inferred from repeated occurrences of similar
        wrongful conduct.

51.     For example, in *Floyd v. City of New York*, 813 F. Supp. 2d 417, 422
        (S.D.N.Y. 2011), the Southern District of New York observed that the City
        of New York had been accused of racial profiling on multiple occasions and
        that it had settled at least one of the lawsuits brought against it concerning
        racial profiling.

52.     In *Ligon v. City of New York*, 12 Civ. 2274, 2013 U.S. Dist. LEXIS 22383, at
        *9-*10 (S.D.N.Y. Feb. 14, 2013), the Court determined that the City of New
        York, acting through the NYPD, engages in unlawful stop and frisk. *See also*

6

*Davis v. City of New York*, 10 Civ. 0699, 2013 U.S. Dist. LEXIS 45601 (S.D.N.Y. March 28, 2013) (same).

53.     Additionally, NYPD Police Officer Michael Carsey was recently convicted of felonies for lying under oath and falsifying information while applying for a search warrant.

54.     Police Officer Carsey's supervisor, Sergeant William Eiseman, had earlier admitted to fabricating facts to justify searching vehicles and homes for cocaine, marijuana and guns, filing false information to obtain search warrants and performing illegal searches of vehicles and homes. That Sergeant Eiseman admitted to perjury and fabricating evidence against innocent persons that he falsely arrested and charged with possession of narcotics and/or illegal drugs, and also admitted to training numerous young police officers to commit similar crimes and/or offenses.

55.     In addition, in or about October 2011, Detective Stephen Anderson testified against Detective Jason Arbeeny, a veteran of the NYPD. That Detective Anderson testified that, among other things, it is a common practice within the NYPD to plant narcotics and/or illegal drugs -- commonly known within the NYPD as "flaking" -- on innocent persons in order to meet arrest quotas. Detective Anderson referred to the practice of planting narcotics and/or illegal drugs on innocent persons as "attaching bodies" to the narcotics and/or illegal drugs. According to Detective Anderson, this practice "was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators."

56.     Regarding the issue of arrest quotas, Detective Anderson confirmed that the NYPD requires officers to fill quotas, and testified that even as a detective "you still have a number [of arrests] to reach."

57.     Recently, a jury determined that officers of the NYPD are permitted, as a policy and/or practice, to fill their arrest quotas by making unlawful arrests. *See Bryant v. City of New York*, Index No. 22011/07 (Sup. Ct. County of Kings Feb. 18, 2011).

7

58.     Prior to his testimony, Detective Anderson and his partner provided false testimony in court claiming that they purchased cocaine from certain individuals who as surveillance video later confirmed did not have any sort of contact or communication with Detective Anderson and his partner during the time period that Detective Anderson and his partner claimed to have purchased the controlled substances and/or illegal drugs.

59.     Detective Arbeeny was subsequently convicted of planting controlled substances and/or illegal drugs on a woman and her boyfriend, and was convicted of the charges against him including official misconduct, offering a false instrument for filing and falsifying business records.

60.     Recently, the New York Supreme Court, County of Kings, Criminal Term, Gustin L. Reichbach, J., determined that the NYPD has a system of flawed procedures that caused Detective Arbeeny's unlawful actions. Judge Reichbach further determined that the NYPD has a widespread culture of corruption and has adopted a "cowboy culture" and practice which he described as "[a]nything goes. . . ." That Judge Reichbach expressed shock at what he described as "the seeming pervasive scope of misconduct [and even worse] . . . the seeming casualness by which such conduct is employed."

61.     Further, in or about 2008, the New York Supreme Court, County of Kings, Criminal Term, Albert Tomei, J., determined at a Mapp hearing in *People v. Simms*, Indictment No. 11263/07, which was held on or about September 9, 2008, that the police officers involved in the arrest in that matter are "not credible" and that the police officers' "testimony is so obviously fabricated . . . to avoid any Constitutional objections the defendant may have . . . and that [any] property taken . . . is to be suppressed because it was the product of an unlawful arrest and search and seizure."

62.     In addition to the instances of police misconduct described above, several officers of the NYPD -- including but not limited to Detective Christopher Perino, Police Officer Michael Daragjati, Police Officer Henry Tavarez, Police Officer William Masso, Detective Oscar Sandino, Detective Sean Johnstone, Sergeant Michael Arenella, Sergeant Jerry Bowens, Police

8

Officer Michael Pena, Police Officer Nicholas Mina, Detective Kevin Spellman, Sergeant Bobby Hadid and Police Officer Admir Kacamakovic -- have recently been convicted of various similar crimes as those described herein including but not limited to falsifying police reports, perjury, corruption, robbery, gun running, drug dealing, prostitution, theft and assault. Former NYPD Commissioner Bernard Kerik was also recently convicted of corruption and similar crimes as those described herein.

63.    In addition to the named individual defendants, several officers of the NYPD assigned to NYPD-Transit District 30 and/or NYPD-84th Precinct -- as the named individual defendants -- routinely make unlawful arrests charging innocent persons with various crimes and/or offenses.

64.    That most of the arrests and charges made by officers assigned to NYPD-Transit District 30 and NYPD-84th Precinct are usually voided and/or dismissed by prosecutors for lack of evidence.

65.    Defendant City of New York has settled numerous lawsuits brought in this district against several officers assigned to the NYPD-Transit District 30 and NYPD-84th Precinct concerning similar arrests and charges as those described herein.

66.    Defendant City of New York maintained the above described policies, practices, customs or usages knowing fully well that the policies, practices, customs or usages lead to improper conduct by its police officers and employees. In failing to take any corrective actions, defendant City of New York acted with deliberate indifference, and its failure was a direct and proximate cause of plaintiff's injuries as described herein.

67.    The actions of defendants, acting under color of State law, deprived plaintiff of his due process rights, and rights, remedies, privileges, and immunities under the laws and Constitution of the United States, treatise, ordinances, customary international law and norms, custom and usage of a right; in particular, the right to be secure in his person and property, to be free from abuse of process, the excessive use of force and the right to due process.

9

68.     By these actions, defendants have deprived plaintiff of rights secured by treatise, ordinances, customary international law and norms, custom and usage of a right, and the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

THIRD CAUSE OF ACTION: 42 U.S.C. § 1985

69.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 68 of this complaint as though fully set forth herein.

70.     In an effort to find fault to use against the plaintiff, defendant officers conspired among themselves and conspired with other individuals to deprive plaintiff who is black of his constitutional rights secured by 42 U.S.C. § 1983, and by the First, Fourth, Fifth, Sixth and Fourteenth Amendments to United States Constitution, because of his race, ancestry and/or ethnicity, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

71.     In light of the foregoing therefore, defendant officers engaged in a conspiracy designed to deprive plaintiff of his constitutional and federal rights in violation of 42 U.S.C. § 1985.

72.     As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore stated.

FOURTH CAUSE OF ACTION: NEW YORK STATE CONSTITUTION, ARTICLE I, §§ 5, 6, 8, 11 & 12

73.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 72 of this complaint as though fully set forth herein.

74.     By reason of the foregoing, and by arresting, detaining and imprisoning plaintiff without probable cause or reasonable suspicion, and harassing and assaulting him and depriving him of due process and equal protection of laws, defendants deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 5 (prohibiting cruel and unusual punishments), Article 1, § 6 (providing for due process),

Article 1, § 8 (guaranteeing freedom of speech), Article 1, § 11 (prohibiting discrimination in civil rights and providing for equal protection of laws) & Article I, § 12 (prohibiting unreasonable searches & seizures) of the New York Constitution.

75.     In addition, defendant officers conspired among themselves and conspired with other individuals to deprive plaintiff of his constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

76.     Defendant officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as officers, agents, or employees. Defendant officers' acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. Defendant officers acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution.

77.     Defendants, their officers, agents, servants, and employees were responsible for the deprivation of plaintiff's state constitutional rights.

FIFTH CAUSE OF ACTION: OTHER NEW YORK TORTS

78.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 77 of this complaint as though fully set forth herein.

79.     The conduct of the defendants, as described herein, amounted to false arrest/imprisonment, assault and battery, unlawful stop and frisk, unreasonable search and seizure, unreasonable detention, negligence, defamation, conspiracy, special injury, loss of consortium, harassment, tortuous interference, abuse of power, fraud, trespass, negligent and intentional emotional distress, negligent hiring and retention of defendant officers malicious abuse of process and malicious prosecution.

80.     Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

WHEREFORE, plaintiff respectfully prays judgment as follows:

a.   For compensatory damages against all defendants in an amount to be proven at trial;

b.   For exemplary and punitive damages against all defendants in an amount to be proven at trial;

c.   For costs of suit herein, including plaintiff's reasonable attorney's fees; and;

d.   For such other and further relief as the court deems proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

Dated: Brooklyn, New York
January 14, 2014

UGO UZOH, P.C.

By:   Ugochukwu Uzoh (UU-9076)
Attorney for the Plaintiff
304 Livingston Street, Suite 2R
Brooklyn, N.Y. 11217
Tel. No: (718) 874-6045
Fax No: (718) 576-2685
Email: u.ugochukwu@yahoo.com

12